**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ORGANIZED VILLAGE OF KAKE; THE
BOAT COMPANY; ALASKA
WILDERNESS RECREATION AND
TOURISM ASSOCIATION; SOUTHEAST
ALASKA CONSERVATION COUNCIL;
NATURAL RESOURCES DEFENSE
COUNCIL; TONGASS CONSERVATION
SOCIETY; GREENPEACE, INC.;
WRANGELL RESOURCE COUNCIL;
CENTER FOR BIOLOGICAL
DIVERSITY; DEFENDERS OF
WILDLIFE; CASCADIA WILDLANDS;
SIERRA CLUB,
                    *Plaintiffs-Appellees*,

                    v.

UNITED STATES DEPARTMENT OF
AGRICULTURE; UNITED STATES
FOREST SERVICE; TOM VILSACK, in
his official capacity as Secretary of
Agriculture; HARRIS SHERMAN, in
his official capacity as Under
Secretary of Agriculture of Natural
Resources and Environment; TOM
TIDWELL, in his official capacity as
Chief, USDA Forest Service,
                    *Defendants*,

No. 11-35517

D.C. No.
1:09-cv-00023-
JWS

OPINION

ALASKA FOREST ASSOCIATION, INC.,
    *Intervenor-Defendant*,

and

STATE OF ALASKA,
    *Intervenor-Defendant–Appellant*.

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted
August 30, 2012—Anchorage, Alaska

Filed March 26, 2014

Before: Michael Daly Hawkins, M. Margaret McKeown,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge McKeown

## SUMMARY[*]

### National Forest Rules

The panel reversed the district court's order, which invalidated a 2003 United States Department of Agriculture regulation temporarily exempting the Tongass National Forest in Alaska from application of the 2001 Roadless Area Conservation Rule.

The panel held that in its 2003 Record of Decision, the Department of Agriculture articulated a number of legitimate grounds for temporarily exempting the Tongass Forest from the 2001 Roadless Rule. The panel concluded that these grounds and the Department of Agriculture's reasoning in reaching its decision were neither arbitrary nor capricious. The panel remanded to the district court to decide whether a Supplemental Environmental Impact Statement is required in the first instance.

Judge McKeown dissented, and would affirm the district court's decision because the administrative record does not support the USDA's decision in 2003 to discard its previous position and temporarily exempt the Tongass from the Roadless Rule.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Thomas E. Lenhart, Assistant Attorney General, Office of the Alaska Attorney General, Juneau, Alaska, for Intervenor-Defendant–Appellant.

Nathaniel S.W. Lawrence, Senior Attorney, Natural Resources Defense Council, Olympia, Washington; Thomas S. Waldo, Earthjustice, Juneau, Alaska, for Plaintiffs-Appellees.

Katherine Wade Hazard, Attorney, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for Defendants.

Julie A. Weis, Haglund Kelley Jones & Wilder, LLP, Portland, Oregon, for Intervenor-Defendant and Amicus Curiae.

**OPINION**

BEA, Circuit Judge:

When a federal agency decides to change its rules to allow roads to be built through a federal forest it had previously ruled be preserved roadless, what reasons are sufficient to justify that change?

The United States Department of Agriculture ("USDA") decided to change its rules to allow roads to be built through an Alaskan forest the USDA had previously ruled should be preserved roadless. We are called on to determine whether the USDA's stated reasons for its change to such rules were

sufficient, and the rule change valid, or arbitrary and capricious, and the rule change invalid.

The district court held invalid, as arbitrary and capricious, a 2003 USDA regulation that temporarily exempts the Tongass National Forest ("Tongass") from application of the 2001 Roadless Area Conservation Rule ("Roadless Rule").[1,2] The State of Alaska appeals that order.

We reverse the district court's order because, in its 2003 Record of Decision ("ROD"), the USDA articulated a number of legitimate grounds for temporarily exempting the Tongass from the Roadless Rule. These grounds and the USDA's reasoning in reaching its decision were neither arbitrary nor capricious.

## I. Background

Various environmental organizations and Alaskan villages brought an action against the USDA and the United States Forest Service and several government officials

---

[1] 68 Fed. Reg. 75136-1 (Dec. 30, 2003) (to be codified at 7 C.F.R. pt. 294).

[2] The Roadless Rule prevents all construction in unroaded portions of inventoried roadless areas, and "would establish national direction for managing inventoried roadless areas, and for determining whether and to what extent similar protections should be extended to uninventoried roadless areas." The final Roadless Rule included prohibitions on timber harvest, road construction and reconstruction except for projects that already had a notice of availability of an Environmental Impact Statement ("EIS") published in the Federal Register prior to the Roadless Rule's publication in the Federal Register. 66 Fed. Reg. 3244-01 (Jan. 12, 2001) (to be codified at 36 C.F.R. pt. 294). There are many such exempted projects. These exempted projects are not in dispute here.

challenging a 2003 Forest Service rule which temporarily exempts the Tongass from the Roadless Rule. The State of Alaska and the Alaska Forest Association intervened as Defendants.

Plaintiffs moved for summary judgment. Defendants opposed Plaintiffs' motion and filed a cross-motion for summary judgment. The district court granted Plaintiffs' motion and denied Defendants' motion, entering an order setting aside the Tongass Exemption, reinstating the 2001 Roadless Rule as to the Tongass, and vacating all previously-approved Tongass area timber sales that were in conflict with the Roadless Rule. Only the State of Alaska now appeals.[3]

## II. Standard of Review

We review *de novo* the district court's grant of summary judgment. *N. Idaho Cmty. Action Network v. United States Dep't of Transp.*, 545 F.3d 1147, 1152 (9th Cir. 2008). This action arises under the Administrative Procedures Act ("APA"), which provides for judicial review of final agency action. 5 U.S.C. §§ 701–706. Under the APA, a court may set aside agency actions only if such actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Under this standard of review, an "agency must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

---

[3] The Alaska Forest Association filed an amicus brief in support of the State of Alaska, but did not file its own notice of appeal. Neither the USDA nor the Forest Service appealed.

An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law.  *Id*.

An "initial agency interpretation," however, "is not instantly carved in stone"; the agency "must consider varying interpretations and the wisdom of its policy on a continuing basis[.]"  *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 863–64 (1984)).  To prevent a claim it was acting in an arbitrary or capricious manner, where an agency changes its policy, the agency must show awareness that it is changing a policy and give a reasoned explanation for the adoption of the new policy.  *FCC v. Fox Television Stations*, 556 U.S. 502, 515–16 (2009).  The agency *does not* always have to "provide a more detailed justification than what would suffice for a new policy."  *Id.* at 515.  But the Supreme Court cautioned judges not to determine whether "the reasons for the new policy are *better* than the reasons for the old one," just whether the policy is permissible under the statute and "the agency *believes* it to be better."  *Id.*  The Court emphasized: "the fact that an agency had a prior stance does not alone prevent it from changing its view or create a higher hurdle for doing so."  *Id.* at 519.  "[A] court is not to substitute its judgment for that of the agency and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Id.* at 513–14 (internal citations and quotation marks omitted).

Contrary to the district court's finding that the USDA acted arbitrarily and capriciously, we find that the USDA clearly acknowledged the 2003 ROD is inconsistent with its previous Roadless Rule and gave a reasoned explanation for the change.

### III. Discussion

The USDA clearly acknowledged that the 2003 ROD, which excluded the Tongass from the Roadless Rule, is inconsistent with its previous Roadless Rule, which included the Tongass.  The USDA's ROD stated that,

> In *State of Alaska v. USDA*, [ 3:01-CV-00039-JSK] the State of Alaska and other plaintiffs alleged that the roadless rule violated a number of Federal statutes, including the Alaska National Interest Lands Conservation Act of 1980 (ANILCA)
>
> . . . .
>
> The Alaska Lawsuit alleged that USDA violated ANILCA by applying the requirements of the roadless rule to Alaska's national forests [including the Tongass]. USDA settled the lawsuit by agreeing to publish a proposed rule which, if adopted, would temporarily exempt the Tongass from the application of the roadless rule (July 15, 2003, 68 FR 41865), and to publish a separate advance notice of proposed rulemaking (July 15, 2003, 68 FR 41864) requesting comment on whether to permanently exempt the

Tongass . . . from the application of the roadless rule.

68 Fed. Reg. 75136.

Furthermore, the USDA gave a reasoned explanation for the change which may "reasonably be discerned." *Fox Television*, 556 U.S. at 513–14. The USDA's ROD explained that it created the Roadless Rule exemption to cease litigation,[4] meet timber demand, and decrease socioeconomic hardships on isolated Alaskan communities.

## A. Ending the Alaska Litigation

The ROD's preamble highlighted that the "roadless rule has been the subject of a number of lawsuits in Federal district courts in Idaho, Utah, North Dakota, Wyoming, Alaska, and the District of Columbia." 68 Fed. Reg. 75136. The ROD explained that the district court of Wyoming had even permanently enjoined implementation of the rule, telling the USDA that it "must start over" with its roadless rulemaking.

---

[4] The dissent claims that we have "side-stepped the primary justification that *Alaska* claims as the basis for the rule change: complying with the operative statutes" including ANILCA and the Tongass Timber Reform Act of 1990 ("TTRA"). We examine the *agency's* reasons for promulgating the ROD—not an intervener's assertion made in litigation. As the dissent points out, the ROD does not say that the USDA promulgated the rule to comply with ANILCA or the TTRA. However, what is determinative to establish the USDA's reasons for the rule change are the USDA's statements in the ROD that it promulgated the rule to remove the threat of litigation that sought to establish the roadless rule violated ANILCA or the TTRA.

The ROD detailed this ongoing litigation because, when it started roadless rulemaking, it had decided it would take numerous factors into consideration, including litigation. The ROD then drew on these facts and gave a detailed explanation of the reason for change in the rule:

> Why is USDA Going Forward With This Rulemaking?
>
> . . .
>
> (3) litigation over the last two years. Given the great uncertainty about the implementation of the roadless rule due to the various lawsuits, the Department has decided to adopt this final rule, initiated pursuant to the settlement agreement with the State of Alaska.

*Id.* at 75137–38. The USDA also explained that, "Given the pending litigation, the [USDA] believes it is prudent to proceed with a decision on temporarily exempting the Tongass from prohibitions in the [R]oadless [R]ule." *Id.* at 75142. Finally, the ROD concluded, "[f]or the reasons identified in this preamble" the USDA decided to exempt the Tongass from the Roadless Rule. *Id.* at 75144. These stated reasons in the ROD's preamble clearly and repeatedly identify a reasoned explanation for the changed policy: a strategy to attempt to end the constant and continuous litigation stemming from the 2001 Roadless Rule.

Simply promulgating a rule pursuant to a settlement is not necessarily "arbitrary or capricious." We can "reasonably discern" that the USDA became worried about the amount of

resources it was expending to defend the Roadless Rule and that the Roadless Rule *might*[5] violate ANILCA. Thus, the USDA promulgated the Roadless Rule exemption to conserve resources and avoid a potential negative litigation outcome (*i.e.*, a final binding decision from a circuit court permanently enjoining the application of the Roadless Rule). By promulgating the Roadless Rule exemption, the USDA stopped litigation that may have resulted in a court-ordered *permanent* injunction against the application of the Roadless Rule in several states. The USDA's ROD, on the other hand, is a solution that does not "foreclose options regarding future rulemaking" and allows the Roadless Rule to continue to exist in many other areas of Alaska and the country.

The district court held that the USDA's rationale of providing "legal certainty" was "implausible" because all the temporary rule did was generate more litigation later and thus prolong the uncertainty. But this is merely *post hoc ergo propter hoc* analysis. Further, nowhere does the ROD state that the purpose of the Roadless Rule exemption is to create "legal certainty." Of course, no settlement provides a "legal certainty" of no future litigation, even as between the *parties*,

---

[5] The settlement between the USDA and Alaska has boilerplate language stating that by entering into the settlement agreement the USDA did not agree with Alaska's interpretation of ANILCA. This boilerplate is akin to recitations in standard settlement agreements that payor does not acknowledge liability simply by paying money to payee. But that language is not very relevant to determining the agency's reason for the rule change; the settlement exists to end the litigation. As the ROD states, the USDA promulgated the Roadless Rule exception to end litigation. Actions speak louder than words.

much less as to nonparties.**[6]**  The ROD states the purpose of the exemption was to cease current on-going litigation that was draining the USDA's limited resources and which may have resulted in a negative outcome, similar to the negative outcome the USDA had experienced in Wyoming.  The settlement agreement agreed to by the USDA *did* end the 2001 litigation by the State of Alaska.

The dissent claims that promulgating the roadless rule to end the Alaska and Tongass litigation is arbitrary and capricious because the USDA had promulgated the 2001 Roadless Rule to reduce nation-wide litigation costs.  Dissent at 26–27.  As is plain, it had not quite ended litigation, at least in Idaho, North Dakota, Wyoming, Alaska, and the District of Columbia.  All of these lawsuits were prompted by the 2001 Roadless Rule; each action sought to invalidate it.  So, as the Supreme Court has instructed, an agency can change its policy. *Fox Television*, 556 U.S. at 515–19.  The ROD states, "The Wyoming District Court's setting aside of the roadless rule with the admonition that the Department 'must start over' represents" a changed circumstance warranting the ROD.**[7]**  68 Fed. Reg. at 75144.  In the face of such instruction by a federal court it is reasonable for an agency to re-think its

---

**[6]** Just ask a circuit judge whether he or she ever sees an appeal of a sentence arrived at in a plea agreement.

**[7]** Beyond litigation, the USDA also gave another detailed explanation of why it abandoned its 2001 decision that nation-wide regulation was preferable.  The USDA decided that "given factors unique to Southeast Alaska, "the socioeconomic costs to local communities of applying the roadless rule's prohibitions to the Tongass . . . warrant[s] treating the Tongass differently from the national forests outside Alaska."."  68 Fed. Reg. at 75139.

rule and, as the dissent characterizes it, "bow[] to pressure."**[8]** Dissent at 27.

Further, our district court examined the USDA's decision, and this litigation, retrospectively. The dissent makes this mistake as well.**[9]** The dissent seems to imply that the USDA did not need to end litigation because it turned out well for the USDA in Wyoming, eight years after the Alaskan settlement was made. Dissent at 20 (citing *Wyoming v. USDA*, 661 F.3d 1209, 1272 (10th Cir. 2011) for the proposition that the Tenth Circuit had upheld the 2001 Roadless Rule). The dissent later argues that the ROD created more litigation than it resolved. Dissent at 25–26 (citing a 2005 regulation and a 2006 case). But such an analysis second guesses the USDA's decision based on 20/20 hindsight. Agencies are not soothsayers, and litigation is an uncertain art. These post-settlement results on appeal and new cases occurred two-to-eight years after the USDA promulgated the ROD. Absent any showing of corruption, we must presume the government was acting in good faith to avoid further negative outcomes such as the unreversed Wyoming district court judgment telling the USDA to start over.

With the help of that 20/20 hindsight it is debatable whether the USDA was *correct* in choosing to settle the

---

**[8]** Surely the dissent does not mean to suggest that promulgating a rule in light of *a federal district court's order* is an arbitrary and capricious act of "bowing to pressure."

**[9]** Ironically, the dissent criticizes the USDA's reason of promulgating the ROD to settle litigation based on *hindsight* and its reason of meeting timber demand (discussed *infra* part § III.B) based on too much *foresight*.

Alaska lawsuit in the way it did and to think that such a settlement would remove legal uncertainty may be debatable. But whether the USDA was *correct* in its prediction of what the future might bring is not the correct question; it is important to apply the correct standard of review to the ROD. This court's duty is not to determine whether the exemption was the *best* or *correct* way to avoid litigation, or even whether the litigation should be ended, but merely to decide whether such litigation-ending policy is permissible and "the agency *believe*[*d*] it to be better." *Fox Television*, 556 U.S. at 515. In 2003, the USDA was faced with Alaska's lawsuit and the District Court of Wyoming's ruling and could not predict what future litigation would bring. The USDA's actions in settling the lawsuit and its reasoned explanation in the ROD supports the finding that the USDA *believed* that promulgating the Tongass exception would decrease litigation over the Roadless Rule. Under *Fox Television*'s deferential standard, the USDA's ROD is not "arbitrary and capricious."

## B. Timber Demand

The USDA also explained that the Roadless Rule exception was being promulgated to increase timber production to meet predicted future demand. The agency decided that while 2001 timber demand could be satisfied with the Roadless Rule in effect, the Roadless Rule, if continued, would result in unacceptable consequences. The ROD states that,

> The last three years represent a significant aberration from historical harvest levels. The 1980–2002 average harvest was 269 MMBF, and in no year prior to 2001 did the harvest level fall below 100 MMBF. . . . In light of

> this historical performance, the 124 MMFB low market estimate is not an unreasonable expectation for the coming decade, particularly if the current slump is merely a cyclical downturn.

68 Fed. Reg. at 75141. Thus, the USDA examined historical averages spanning twenty-two years, looked at the last three years of low demand data as a significant aberration, and determined that a "low market" historical estimate was a valid prediction of the future. The USDA has recognized expertise and discretion in predicting timber demand. *See Friends of the Bow v. Thompson*, 124 F.3d 1210, 1219 (10th Cir. 1997) (Forest Service could discount study with technical defects based on its "substantial expertise" on the "relevant issues" of timber demand); *Se. Conference v. Vilsack*, 684 F. Supp. 2d 135, 146 (D.D.C. 2010) ("The Forest Service has discretion to make predictions of market demand" for timber.). It is certainly reasonable for the agency to determine that a higher market estimate from twenty-two years of data is preferable to a lower market estimate based upon demand in a short cyclical downturn, even for a "short-term"[10] rule. The economy could return to pre-downturn figures even in a short time span.[11] As the Supreme Court has instructed, we defer to agency expertise and should not

---

[10] The 2003 Roadless Rule exemption does not have an "expiration date." The ROD states the exemption will last until a final rule is promulgated, however long that may take. As yet, no final rule has been promulgated. Thus this "short-term" rule has lasted over a decade.

[11] In fact, as soon as 2002 the State of Alaska was selling timber in quantities above its projected harvest—and at what the State of Alaska claims is an unsustainable level—to help bridge the gap between national forest harvest and local industry needs.

"substitute [our] judgment for that of the agency." *Fox Television*, 556 U.S. at 513. Further, we do not have to determine whether the USDA chose the *best* method for predicting demand so long as the method is neither arbitrary nor capricious. *Id.* at 515; 5 U.S.C. § 706(2)(A).

The plaintiffs argue that using the low market scenario of 124 MMBF appears far too optimistic in light of the depressed demand from 2001 to 2003, and the dissent attacks the USDA's decision as "speculation." Dissent at 30. But we do not require agencies to be constant pessimists that may not promulgate a future rule—even a "short-term" future rule—based upon the opinion that the economy will improve and demand for timber will rise. Further, it is reasonable for the USDA to decide that even a potentially "short-term" rule could last long enough for the economy to make a marked improvement, which would result in rapidly changing near-term demand. Promulgating a rule that is meant to last at least several years on the basis of *extensive* historical averages and increased economic experience from the years 2001–2003 is not "arbitrary and capricious."

## C.  Socioeconomic Hardships

Another reason for the USDA's promulgation of the ROD was because of its appreciation of the socioeconomic hardships created by the Roadless Rule.[12]

---

[12] The dissent states that one of the reasons the USDA went forward with the rule was "roadless values" and such a reason is also arbitrary and capricious. Dissent at 24–25. With respect, that is a misreading of the ROD. The USDA weighted  roadless values in the ROD. But in its explicit statement "Why is the USDA Going Forward With This Rulemaking?", the USDA never stated it was promulgating the rule *because* of roadless values. Instead, the ROD weighed roadless values as

The USDA's ROD explains that "impacts of the roadless rule on local communities in the Tongass are particularly serious.   Of the 32 communities in the region, 29 are unconnected to the nation's highway system.   Most are surrounded by marine waters and undeveloped National Forest System land."  68 Fed. Reg. at 75139.  The Roadless Rule would condemn these communities to continued isolation.   Recognizing these unique circumstances, "the abundance of [other Tongass] roadless values," and "the socioeconomic costs to local communities of applying the roadless rule's prohibitions to the Tongass, all warrant treating the Tongass differently from the national forests outside of Alaska." *Id.*  The ROD states that this conclusion is consistent with the extensive 1997 Tongass Forest Plan. This is a reasoned explanation based on observable conditions and the USDA's expertise.  It may not be the decision the dissent would make, but it is not arbitrary and capricious.

The dissent argues that the ROD is arbitrary and capricious because the ROD was a temporary rule based on long-term predictions and did not identify any new facts to justify a change in policy.   Dissent at 20–21.   But as discussed above, it was not arbitrary and capricious for the USDA to use long-term, rather than short-term, data to promulgate a ROD, the expiration date of which was, and is, unknown.   Further, as also discussed above, there *was* a change that forced the USDA to re-examine prior information

---

a reason for not exempting the Tongass from the 2001 Roadless Rule against reasons for doing so, and found the roadless values in the Tongass so abundant as not to require further protection.  However, if "roadless values" is an independent reason for promulgating the ROD, then it is well within the discretion and expertise of the USDA to determine whether roadless values are abundant or not, even without the 2001 Roadless Rule.

and request new comments—changed legal circumstances caused by pending litigation and a different economic outlook. The USDA reexamined its prior policy and used its expertise to decide the socioeconomic hardships the 2001 Roadless Rule put on the unique and isolated communities of Southeast Alaska were no longer acceptable. This evaluation was not arbitrary and capricious, and the dissent cannot use the fact that the USDA had a prior policy as a reason to make it so. *See Fox Television*, 556 U.S. at 519 ("the fact that an agency had a prior stance does not alone prevent it from changing its view or create a higher hurdle for doing so").

IV. Conclusion

The USDA's reasons for promulgating the 2003 ROD are neither arbitrary nor capricious. The agency acknowledges that it has changed its previous policy of not exempting the Tongass from the Roadless Rule, and it has given reasoned explanations for the change based on litigation, changes in economic predictions, and previously found socioeconomic costs.

We hold that all of the USDA's reasons are acceptable under the APA. However, even had we found that some of the USDA's reasons were arbitrary and capricious, our scope of review requires affirmance if *any* of the reasons given are not arbitrary and capricious. *See Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281 (1974) (reversing the district court's holding that an agency decision was arbitrary and capricious while agreeing with the district

court's analysis as to one of the agency's reasons as being, in fact, arbitrary and capricious).[13]

The USDA's reasons for the exemption are entirely rational, and the ROD should be upheld. Because the district court decided the USDA's reasons for exempting the Tongass from the Roadless Rule were arbitrary and capricious, it did not reach the question whether the USDA should have performed a Supplemental Environmental Impact Statement.

---

[13] In *Bowman*, motor carriers filed applications with the Interstate Commerce Commission ("Commission") to conduct general commodities operations between points in the United States. *Bowman*, 419 U.S. at 283. The applicants submitted evidence that the applicants' service was required for public convenience, and the existing carriers submitted evidence that the existing carriers' service was satisfactory and no new carriers were needed. *Id.* at 285. The Commission granted three of the applications. *Id*. at 283. The Commission found that the existing carriers' evidence did not rebut the applicants' evidence that more carriers were needed because the existing carriers' evidence (1) related to short periods of time or specific shippers and (2) the studies represented service provided by the existing carriers *after* the Commission had noticed the hearing. *Id.* at 287. The existing carriers brought an action in the district court to suspend, enjoin, and annul the order as arbitrary and capricious. *Id*. at 283. A three-judge district court invalidated the order as arbitrary and capricious. *Id.* The district court held that the Commission had applied inconsistent standards because the evidence was based on the same study periods. *Id*. at 287. On direct appeal, the Supreme Court reversed and remanded. *Id.* at 284. The Supreme Court *agreed* with the district court's conclusion of arbitrary and capriciousness as to the Commission's first reason and found there was no basis for the Commission to distinguish the evidence based on the short time period because all the evidence was based on short periods of time and particular shippers. *Id.* at 288. Then the Supreme Court found that the Commission's second reason regarding the studies was a rational basis on which to distinguish the evidence. *Id*. Therefore, the Supreme Court upheld the Commission's finding that the existing carriers did not rebut the applicant's evidence of fitness and public need for new carriers.

Because we reverse the district court's findings, we remand the case to the district court to decide whether a Supplemental Environmental Impact Statement is required in the first instance.

**REVERSED and REMANDED.**

McKEOWN, Circuit Judge, dissenting:

I respectfully dissent. After extensive public comment, in 2001 the United States Department of Agriculture ("USDA"), acting through the United States Forest Service, adopted the Roadless Area Conservation Rule. Special Areas; Roadless Area Conservation ("Roadless Rule" or "Rule"), 66 Fed. Reg. 3244, 3253 (Jan. 12, 2001) (to be codified at 36 C.F.R. pt. 294). The Rule specifically applied to Alaska's Tongass National Forest (the "Tongass"), which is by far the nation's largest forest. The Ninth Circuit reversed a preliminary injunction enjoining the USDA from implementing the Roadless Rule nationally, and the Tenth Circuit upheld the Rule. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1126 (9th Cir. 2002), *partially abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Wyoming v. USDA*, 661 F.3d 1209, 1272 (10th Cir. 2011).

In an about-face, the USDA decided in 2003 to temporarily exempt the Tongass from the Roadless Rule, pending the USDA's adoption of a final, permanent rule, which the agency never actually promulgated. Special Areas; Roadless Area Conservation; Applicability to the Tongass National Forest, Alaska ("Tongass Exemption"), 68 Fed. Reg.

75,136 (Dec. 30, 2003) (to be codified at 36 C.F.R. pt. 294). That monumental decision deserves greater scrutiny than the majority gives it. Our precedent demands a "thorough, probing, in-depth review" of the USDA's decision, not a cursory quick look. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). In an extensive, well-reasoned decision, the district court held that the Tongass Exemption is arbitrary and capricious. I agree. Tellingly, the USDA did not appeal this decision, leaving only the State of Alaska before us now.

The majority fails to adequately probe the record for a reasoned justification for the USDA discarding its previous position—adopted only two years earlier—to apply the Roadless Rule to the Tongass. Of course agencies may change their positions over time, and over administrations, but they cannot completely reverse course lightly. Rather, the USDA must have "good reasons" for the policy and it must "*believe[]* it to be better." *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009); *see id.* at 515–16 ("[I]t is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy."). Contrary to the majority's contention, Maj. Op. at 7, where, as here, a "new policy rests upon factual findings that contradict those which underlay its prior policy," the agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Fox Television*, 556 U.S. at 515. That justification is missing here.

In assessing the USDA's proffered reasons, the majority entirely side-steps the main rationale that Alaska provides for the rule change: complying with the operative statutes,

the Alaska National Interest Lands Conservation Act of 1980 ("ANILCA"), 16 U.S.C. § 3101 *et seq.*, and the Tongass Timber Reform Act of 1990 ("TTRA"), 16 U.S.C. § 539d, which amended ANILCA. The reasons the majority does provide—legal uncertainty, timber demand, and socioeconomic hardships—are unsupported by the record and thus are insufficient to uphold the USDA's decision.

I would affirm the district court's decision because the administrative record does not support the reasons for the rule change that the USDA gave in its Tongass Exemption Record of Decision ("ROD"). *See* Tongass Exemption, 68 Fed. Reg. 75136; *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").

## I.   THE USDA DID NOT REST ITS RULE CHANGE ON COMPLIANCE WITH ANILCA AND TTRA

Alaska principally argues that, in viewing the ROD as a whole, the "USDA's primary legal concern in pursuing this rulemaking was to comply" with ANILCA and TTRA. The majority's analysis omits this issue entirely, stating without further discussion that applying the Roadless Rule to the Tongass "*might* violate ANILCA."[1] Maj. Op. at 10–11.

---

[1] The majority dismisses the need to explore this argument further because it was presented by Alaska, not the agency that promulgated the decision on review. Maj. Op. at 9, n.4. Yet the USDA is not before us now, and this is the key argument made on appeal by Alaska, which is defending the Tongass Exemption.

The ROD provides no support for Alaska's proposition or the majority's conjecture. In initially adopting the Roadless Rule, the USDA took the position that such a rule would not violate ANILCA and TTRA. As Alaska acknowledges, in the ROD the "USDA did not explicitly reverse its legal conclusion about whether applying the Roadless Rule to the Tongass violates ANILCA or TTRA."

In fact, the USDA neither explicitly nor implicitly changed its position on complying with these statutes. The ROD makes no reference to ANILCA and TTRA as a basis for the USDA's decision. Rather, the ROD merely recounts the factual history of the USDA's settlement in Alaska's earlier legal dispute, stating: "The Alaska lawsuit *alleged* that USDA violated ANILCA by applying the requirements of the roadless rule to Alaska's national forests. USDA *settled the lawsuit* by agreeing to publish a proposed rule which, if adopted, would temporarily exempt the Tongass from the application of the roadless rule . . . ." Tongass Exemption, 68 Fed. Reg. at, 75,136 (emphasis added). Even the settlement agreement explicitly provided that it "shall not be evidence of any agreement by any party to any allegations raised by any other party in the case . . . ."

In responding to public comments on the import of ANILCA, the ROD explained that the statute, as amended by TTRA, should allow for considerations other than timber demand. Tongass Exemption, 68 Fed. Reg. at 75,142. It directed the Secretary of Agriculture to seek to provide a supply of timber meeting market demand "consistent with providing for the multiple use and sustained yield of all renewable forest resources, and subject to appropriations, other applicable laws, and the requirements of the National Forest Management Act." *Id.* The ROD stated that the

USDA "considered carefully" the statutes and that the Exemption was "consistent" with ANILCA. *Id.* But significantly, the USDA did not state that the statute mandated an exemption. *Id.*

Alaska has no basis to bootstrap its allegations from a prior suit to impose a theory or obligation on the USDA that the agency did not adopt or articulate. Yet this unsupported statutory theory permeates Alaska's entire argument on appeal. Consequently, the district court correctly determined that the ROD did not include compliance with ANILCA and TTRA as an express rationale for the Tongass Exemption.

## II. THE USDA'S JUSTIFICATIONS FOR THE RULE CHANGE FALL SHORT

Beyond statutory compliance, Alaska argues that the USDA provided four main reasons for the Tongass Exemption: (i) legal uncertainty, (ii) timber demand, (iii) socioeconomic costs, and (iv) roadless values.[2] To properly assess the ROD, we must ask whether—in light of all the proffered justifications—the record supports the USDA's rationale for excluding the Tongass from the Roadless Rule's reach.

According to the ROD, the USDA in part adopted the Tongass Exemption because it "best implement[ed] the letter

---

[2] Apart from the four main justifications listed in the ROD, Alaska offers a number of other reasons to justify the USDA's position reversal, including that the USDA never gave a full explanation for why it initially applied the Roadless Rule to Alaska. Alaska's effort falls flat, however, because the USDA did not proffer these explanations and the record does not support them.

and spirit of congressional direction along with public values, in light of the abundance of roadless values on the Tongass, the protection of roadless values already included in the Tongass Forest Plan, and the socioeconomic costs to local communities of applying the roadless rule's prohibitions." Tongass Exemption, 68 Fed. Reg. at 75,142. The record contradicts the USDA's rationale for finding an exemption necessary or believing it to be the "best" option in light of legal uncertainty, timber demand, socioeconomic costs, and roadless values.

### A.  LEGAL UNCERTAINTY

The ROD stated that the Tongass Exemption would reduce the "great uncertainty about the implementation of the roadless rule due to the various lawsuits." Tongass Exemption, 68 Fed. Reg. at 75,138. The USDA's stated aim was not to "end[] the Alaska litigation," as the majority asserts, *see* Maj. Op. at 9, but to mitigate legal uncertainty. The district court's conclusion captures the disingenuity of the USDA's explanation and the majority's uncritical acceptance of its rationale: "In light of the fact that the Tongass Exemption was promulgated as a *temporary* exemption and the Forest Service agreed to engage in further rulemaking addressing the Tongass and Chugach in a 'timely manner,' the USDA's rationale that adoption of the temporary Tongass exemption would provide legal certainty is implausible."

Unsurprisingly, the temporary rule and the attempted repeal of the Roadless Rule generated more litigation and prolonged the legal uncertainty—a foreseeable consequence of promulgating a permanent rule, granting a temporary exemption, and then attempting to repeal the permanent rule.

*See* Special Areas; State Petitions for Inventoried Roadless Management, 70 Fed. Reg. 25,654 (May 13, 2005) (to be codified at 36 C.F.R. pt. 294) (repealing the Roadless Rule nationwide in favor of a "State petitions" process); *California ex rel. Lockyer v. USDA*, 459 F. Supp. 2d 874, 909, 912 (N.D. Cal. 2006) (striking down the repeal for violating the National Environmental Policy Act and the Endangered Species Act). Critical here is not that additional litigation ultimately ensued, but that a temporary change was unlikely to address the legal uncertainty surrounding the Roadless Rule's implementation when the USDA reversed course. That the rule change was "initiated pursuant to the settlement agreement with the State of Alaska," as the majority emphasizes, does nothing to support a claim that the temporary change would reduce this uncertainty. *See* Maj. Op. at 10. In the ROD, the USDA even acknowledged that the temporary rule would not "foreclose options regarding the future rulemaking" for the permanent statewide rule, Tongass Exemption, 68 Fed. Reg. at 75138, making clear that it viewed the temporary rule as just that.

Before changing its position, the USDA determined that maintaining the Roadless Rule in the Tongass would *lower* lawsuit-related costs. The USDA's 2000 final environmental impact statement ("FEIS") stated that the Roadless Rule was "needed" in part because of "[n]ational concern over roadless area management continu[ing] to generate controversy, including costly and time-consuming appeals and litigation" from proposals to develop the roadless areas. The FEIS concluded that the selected "Tongass Not Exempt" alternative would result in the "[g]reatest savings in appeals and litigation costs." Similarly, in 2001 the USDA "decided that the best means to reduce this conflict [wa]s through a national

level rule," i.e. the Roadless Rule.  Roadless Rule, 66 Fed. Reg. at 3,253.

The agency then completely reversed its position in 2003, stating without explanation that the Tongass Exemption would reduce legal uncertainty.  The USDA did not address the predicted increase in litigation costs, nor did it acknowledge that carving out the Tongass from the Roadless Rule's reach likely would set off another litigation firestorm. The USDA failed to provide a "more detailed justification" for this blatant internal inconsistency and reversal of position, and no rationale that the USDA articulated suggests that it had a basis to believe at the time that a temporary exemption would create greater legal certainty. *See Fox Television*, 556 U.S. at 515, 516.  After advocating for a national rule to bring uniform application, the USDA bowed to pressure to exempt the Tongass and upended uniformity.  The district court rightly rejected the USDA's legal uncertainty rationale as "implausible."  The majority erroneously contends that this determination constituted *post hoc* analysis, Maj. Op. at 11, despite the district court's clear examination of whether the reasons the USDA provided when it implemented the rule change logically supported the position reversal *at that time*.

## B.  TIMBER DEMAND AND TTRA

The second proffered rationale—that the USDA promulgated the Tongass Exemption to meet predicted future timber demand—also lacks support in the record.  We have recognized that "TTRA was written to amend ANILCA by eliminating its timber supply mandate" and to make the goal of meeting timber demand contingent on other additional criteria. *Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 730–31 (9th Cir. 1995); *see also*

16 U.S.C. § 539d(a) (subordinating the aim of meeting timber demand to "appropriations, other applicable law, and the requirements of the National Forest Management Act of 1976," and "to the extent consistent with providing for the multiple use and sustained yield of all renewable forest resources"). Importantly, "TTRA envisions not an inflexible harvest level, but a balancing of the market, the law, and other uses, including preservation." *Alaska Wilderness Recreation*, 67 F.3d at 731.

Without mentioning TTRA or acknowledging that Congress specifically crafted the statute to accommodate competing goals, the majority states that the Tongass Exemption "was being promulgated to increase timber production to meet predicted future demand." Maj. Op. at 14. The ROD concluded that "the roadless rule prohibitions operate as an unnecessary and complicating factor limiting where timber harvesting may occur," Tongass Exemption, 68 Fed. Reg. at 75141, but it did not explain why its cited facts regarding the potential *long-term* variability of the timber market supported a *temporary* exemption. The ROD recognized that, according to FEIS projections, "50 million board feet [("MMBF") of timber] could be harvested annually in the developed areas along the existing road system in the Tongass." *Id.* at 75,140. The FEIS for the Roadless Rule estimated in 2000 that this harvest would not support all of the timber processing facilities in the region. *Id.* However, as the ROD pointed out, the FEIS based these projections on a long-term market demand estimate of 124 million board feet that had proven several times greater than the *actual* market demand of subsequent years: "[T]he low market scenario [of 124 MMBF] appears optimistic in light of the 48 MMBF of Tongass National Forest timber harvested in 2001, the 34 MMBF harvested in 2002, and the 51 MMBF

harvested in 2003 . . . ." *Id.* at 75,141.[3]  In short, the facts in the administrative record unequivocally showed a depressed timber demand.  The Roadless Rule decision concluded that the available timber under contract provided "enough timber volume to satisfy about 7 years of estimated market demand." Roadless Rule, 66 Fed. Reg. at 3,255.  Based on the record, the timber demand did not support the Tongass Exemption.

The agency failed to give adequate reasons for adopting the temporary exemption, particularly given the USDA's acknowledgment that the intervening years had shown timber demand was even lower than had been expected.  It simply stated that timber demand in recent years was below long-term historical averages and speculated that this level could have been due to a mere cyclical downturn.  This rationale failed to take account of the FEIS's explicit conclusion that available timber was sufficient to meet near-term demand.[4] Although the rationale that the majority proposes, that it would be reasonable for the agency to employ long-range data over short-term trends, may be plausible, *see* Maj. Op. at 15, the agency itself never proffered such a rationale or otherwise provided an explanation for its evasive treatment of the low timber demand.  To reiterate, its use of timber demand data need not be proven prescient with the benefit of time.  Where it fails is in providing logical support for the

---

[3] Market forces, not the Roadless Rule, explain these levels, given that the Roadless Rule did not go into effect in the Tongass due to various injunctions, *see Lockyer*, 575 F.3d at 1006–07 (recounting history of legal challenges to the Roadless Rule), and due to the Tongass Exemption.

[4] During the 2003 rulemaking on the Tongass Exemption, the Forest Service found that no significant factual developments arose since the Roadless Rule that justified another EIS and accordingly relied on the FEIS prepared for the Roadless Rule.  68 Fed. Reg. at 75141.

rule change when it was made.  Thus, the USDA's long-range speculation justifying a near-term solution is at odds with the facts in the record.

## C.  SOCIOECONOMIC COSTS

The ROD's discussion of the Exemption's socioeconomic impact on local communities in the Tongass, particularly with respect to job losses and road and utility needs, is similarly flawed.  The ROD relied on the FEIS, which "estimated that a total of approximately 900 jobs could be lost *in the long run* in Southeast Alaska due to the application of the roadless rule." Tongass Exemption, 68 Fed. Reg. at 75137 (emphasis added).  The ROD's use of this estimate was arbitrary and capricious for two reasons.  First, the estimate applied to long-term job losses, and the ROD failed to relate it to the short-term duration of the explicitly *temporary* Tongass Exemption.  Second, the ROD did not consider the dramatic post-2000 decline in timber demand.  The USDA based its FEIS job loss estimate on the assumption that the Roadless Rule would cause a reduction of 77 MMBF per year in timber harvesting that no longer held true in 2003.  Yet, as explained above, between 2000 and 2003 timber harvests dropped dramatically due only to market demand.  The USDA failed to account for these factual omissions, which the majority may not backfill for the USDA now.  *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) ("The court is not empowered to substitute its judgment for that of the agency." (internal quotation marks omitted)); *see* Maj. Op. at 17–20.  While the majority emphasizes the socioeconomic costs imposed by the isolation of local communities in the Tongass, *see* Maj. Op. at 16, the USDA provides no explanation for how a temporary rule change would alter the economic outlook for these

communities. Because the record does not support the job loss rationale provided in the ROD and because the USDA did not take into account reduced timber demand and the short-term nature of the rule change when it was adopted, the district court correctly found the socioeconomic cost justification arbitrary and capricious.

The record also belies the USDA's position in the ROD that the Roadless Rule would have significant negative impacts on meeting road and utility needs in the Tongass. The Roadless Rule maintained the Secretary of Agriculture's discretion to approve Federal Aid Highways, if the project was "in the public interest," or if it maintained the purpose of the land and "no other reasonable and prudent alternative exist[ed]."[5]  Roadless Rule, 66 Fed. Reg. at 3256. Regarding state roads, the FEIS concluded in 2000 that "in the reasonably foreseeable future, construction of State highways through inventoried roadless areas in Alaska may not be an issue," because "none of the [proposed State] transportation corridors identified in [the Tongass Land and Resource Management Plan] have received serious local or State support, and none are on any approved project lists."  The ROD did not identify any new road proposals that suggested a need for the Exemption.[6]  The USDA failed to explain why road considerations warranted a temporary exemption given the lack of any potential road construction on the horizon.

---

[5] Even without the Roadless Rule, the Secretary's decision to approve such highways is discretionary.  *See* 23 U.S.C. § 317(b).

[6] The agency's Supplemental Information Report ("SIR") for the Tongass Exemption specifically stated that "no new information has come to light that would alter the expectations of major roads or transportation corridors or associated economic impacts estimate[d] in the Roadless [Rule] FEIS . . . ."

Nor did the ROD explain the basis for the USDA's new position that the Roadless Rule would impact utility corridors in southeastern Alaska. The Roadless Rule specifically permits construction of utility lines, along with the necessary vehicles and heavy motorized equipment. *See* Roadless Rule, 66 Fed. Reg. at 3,258, 3,272. The FEIS concluded that the nationwide utility corridor impacts "would be minimal" and it did not identify any impacts in southeastern Alaska. The ROD's reliance on utility needs is at odds with the evidence. Moreover, as with its conclusion regarding road construction, the USDA failed to explain in the ROD why a temporary exemption was necessary when the agency could not point to any utility projects that it might affect.

## D.  ROADLESS VALUES[7]

In the ROD, the USDA stated that it had "determined that, at least in the short term, the roadless values on the Tongass are sufficiently protected under the Tongass Forest Plan and that the additional restrictions associated with the roadless rule are not required."[8] Tongass Exemption, 68 Fed. Reg. at 75,138. This posture, a reversal of the position the USDA

---

[7] Roadless values include high quality or undisturbed soil, water, and air; sources of public drinking water; diversity of plant and animal communities; habitat for threatened, endangered, and sensitive species; varieties of dispersed recreation; reference landscapes; and traditional cultural properties and sacred sites. Roadless Rule, 66 Fed. Reg. at 3,245.

[8] The majority asserts that the USDA did not express roadless values as a reason for the rule change. Maj. Op. at 16, n.12. However, as the quoted ROD text reveals, the USDA did expressly factor into its rationale its view that the roadless values were sufficiently protected. *See also* Tongass Exemption, 68 Fed. Reg. at 75,142.

adopted in the Roadless Rule,[9] also is the kind of policy judgment—on what is "enough" protection—that cannot be readily deemed right or wrong. The agency's ultimate policy decision on whether sufficient roadless value protection existed is necessarily linked to its reasoning on timber demand, community impact, and other factors, which are unsupported by the record. At bottom, the USDA failed to provide a logical explanation for its complete position reversal.

## III.    THE USDA'S ERROR WAS NOT HARMLESS

In the rulemaking context, an error is "harmless only where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir. 1992). Several of the USDA's key rationales underlying the ROD "run[] counter to the evidence before the agency, or . . . [are] so implausible that [they] could not be ascribed to a difference in view or the product of agency expertise." *Montana Wilderness Ass'n v. McAllister*, 666 F.3d 549, 555 (9th Cir. 2011) (internal quotation marks omitted). The USDA failed to account for relevant facts in the FEIS and the SIR that plainly contradicted the substance of the ROD's conclusions. Therefore, the ROD cannot overcome the harmless error hurdle.

I respectfully dissent.

---

[9] The USDA's position also expressly contradicts Ninth Circuit precedent determining that "the Roadless Rule provide[s] greater substantive protections to roadless areas than the individual forest plans it superseded." *Lockyer*, 575 F.3d at 1014 (citing *Kootenai Tribe*, 313 F.3d at 1110, 1124–25).